UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LATIFA ISAKHANOVA,

Plaintiff,

v.

WILLIAM L. MUNIZ, et al.,

Defendants.

Case No. 15-cv-03759-TEH

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

This matter came before the Court on January 11, 2016 for a hearing on Defendants' Motion to Dismiss. Docket No. 15. After carefully considering the parties' written and oral arguments, the Court hereby GRANTS Defendants' motion, for the reasons set forth below.

**BACKGROUND**

The First Amended Complaint ("FAC") alleges that on August 18, 2013, Latifa Isakhanova ("Plaintiff") arrived at Salinas Valley State Prison ("SVSP") to visit her son, who is an inmate there. FAC ¶ 26 (Docket No. 9). At some point prior to this visit, Plaintiff's son had "signed two prison group grievances and two inmate group appeals challenging SVSP's interference with the religious practices of Muslim inmates." *Id.* ¶ 32.

At the outset, Plaintiff's son was brought into the visiting room so the two could share a "contact visit." *Id.* ¶ 26. Sometime after the visit began, a correctional officer removed Plaintiff's son from the visiting room. *Id.* Later, a correctional officer returned and handcuffed Plaintiff (*id.* ¶ 27),[1] purportedly because the guards suspected that she had passed a "bindle of tobacco" to her son during their visit (*id.* ¶¶ 3, 29).

---

[1] Plaintiff alleges that "Doe 1" is the officer who handcuffed her. *Id.* ¶ 27.

1   Ultimately, SVSP officers detained Plaintiff for a period of seven to eight hours (*id.*
2   ¶ 27),[2] during which time they strip searched her (*id.* ¶¶ 33-34),[3] searched her car and
3   phone against her will and without a warrant (*id.* ¶¶ 36, 38-39),[4] made offensive and
4   derogatory remarks about her religion (Islam) and her foreign national origin (she is a
5   nationalized U.S. citizen who immigrated from Azerbaijan) (*id.* ¶ 31),[5] and denied her
6   access to her diabetes medication, food, and water (*id.* ¶¶ 35, 37).[6]

7   When they finally released Plaintiff, prison officials "threatened [] that if she
8   complained about her mistreatment, false arrest and unlawful searches, she would never
9   see her son again." *Id.* ¶ 41.[7] Following this incident, SVSP suspended Plaintiff's
10  visitation rights for one year, allegedly for passing chewing tobacco to her son and for
11  having unlawful text message communications with her son, but Plaintiff denies the
12  veracity of both of these allegations. *Id.* ¶¶ 39-40, 43.[8] SVSP denied Plaintiff's appeals of
13  this suspension and her reapplication for visitation rights for nearly two years,[9] and
14  reinstated Plaintiff's visitation rights only after this lawsuit was filed. *Id.* ¶ 47.

15  On the basis of these allegations, Plaintiff brings three causes of action: two 42
16  U.S.C. § 1983 ("Section 1983") causes of action under the Fourth Amendment, for

---

[2] Plaintiff alleges that "Does 1-50" were responsible for the seven- to eight-hour detention. *Id.* ¶¶ 27-29.
[3] Plaintiff alleges that Defendant officers Hyde, Alonzo, and "Does 6-7" participated in the strip search. *Id.* ¶ 33. The officers "took [Plaintiff] to a bathroom and ordered her to unbutton her shirt, rearrange her bra, and pull down her pants and undergarments for a visual inspection of her genitals and anus." *Id.* No contraband was found. *Id.* ¶ 34.
[4] Plaintiff alleges that "Does 1-50" threatened her and demanded that she consent to the warrantless searches of her phone and car. *Id.* ¶¶ 36, 38-39. Plaintiff consented to the searches only under duress, because Defendants threatened Plaintiff with criminal prosecution and overnight detention if she resisted the searches. *Id.*
[5] Plaintiff alleges that "Does 1-50" made the offensive and derogatory statements listed in the FAC. *Id.* ¶ 31.
[6] Plaintiff alleges that "Does 1-50" were responsible for depriving her of medication, food, and water. *Id.* ¶ 35.
[7] Plaintiff alleges that "Does 1-50" threatened her not to report any of this mistreatment. *Id.* ¶ 41.
[8] Plaintiff alleges that the "letter" connected to this visitation suspension was written by Defendant Grounds, and that the corresponding "notice" was prepared by Defendant Alvarado. *Id.* ¶¶ 43-44.
[9] Plaintiff alleges that Defendants, including Muniz and Segura, denied her reapplications for visitation rights. *Id.* ¶ 46.

2

unlawful seizure (*id.* ¶¶ 51-54) and unlawful search (*id.* ¶¶ 55-60); and a third cause of action under the First and Fourteenth Amendments (*id.* ¶¶ 61-66). This third cause of action actually alleges the violation of five separate constitutional rights: Fourteenth Amendment right to equal protection (*id.* ¶ 62); First Amendment right to free exercise of religion (*id.* ¶ 63); First Amendment right to petition the government (*id.* ¶ 64); First Amendment right to free speech without retaliation (*id.* ¶ 65); and Fourteenth Amendment right to familial association (*id.* ¶ 66). In total, then, Plaintiff alleges seven separate constitutional violations.[10]

All three causes of action are brought against all thirteen individual Defendants: Jeffrey A. Beard; W. Muniz; R. Alvarado; J. DeAnzo; G. Segura; A. Lyons; R. Grounds; M. Alonzo; C. Wilson; A. Lopez; [FNU] Hyde; L. Reyes; and A. Ibanez.[11] All Defendants are sued in their individual capacities except Defendant Beard – the Secretary of the California Department of Corrections and Rehabilitation ("CDCR") – who is "sued as a defendant in his official capacity only for purposes of injunctive relief." *Id.* ¶ 15.

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 547, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[10] Should Plaintiff elect to further amend the FAC, the Court requests that she allege every separate constitutional violation as a separate cause of action.
[11] The Attorney General's Office does not represent Defendant Officers Hyde, Reyes, and Ibanez, but brings this motion to dismiss on behalf of the remaining ten individual Defendants. Reply in Supp. of Defs.' Mot. to Dismiss ("Reply") at 1 n.1 (Docket No. 19).

1  misconduct alleged." *Id.* Such a showing "requires more than labels and conclusions, and
2  a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S.
3  at 545, 555.

4  In ruling on a motion to dismiss, a court must "accept all material allegations of fact
5  as true and construe the complaint in a light most favorable to the non-moving party."
6  *Vasquez v. L.A. Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however,
7  "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556
8  U.S. at 678 (citation omitted). Any dismissal should be with leave to amend, unless it is
9  clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v.*
10 *Hart Brewing, Inc.*, 143 F.3d 1293, 1296, 1298 (9th Cir. 1998).

## DISCUSSION

All three of Plaintiff's claims arise under Section 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or sage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

To state a claim under Section 1983, the complaint must show: "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988). "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains].' " *Id.* (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

Defendants present six reasons that Plaintiff's Section 1983 claims should be dismissed, either entirely or as to certain Defendants. Defs.' Mot. to Dismiss ("Mot.") at 4-5. The Court addresses each reason in turn below, granting Defendants' motion to

4

1  dismiss as to each Defendant and cause of action implicated by each argument.

**I.  Defendant Beard must be dismissed for failure to properly plead "official capacity" liability under Section 1983.**

First, Defendants argue that "Plaintiff's official capacity claim against Defendant Beard must be dismissed" for failure to plead that an official policy or custom motivated Defendants' conduct. Mot. at 5. Plaintiff responds that Secretary Beard is named "in his official capacity for purposes of obtaining injunctive relief," and that the claim against him is proper under the doctrine of *Ex parte Young*. Opp'n to Defs.' Mot. to Dismiss ("Opp'n") at 6; FAC ¶ 15.

Generally, the Eleventh Amendment serves as a jurisdictional bar to suits brought by private parties against a state or state agency, including actions against a state Board of Corrections. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) ("[S]uit against the State and its Board of Corrections is barred by the Eleventh Amendment."). Because "[s]uits against state officials in their official capacity [] should be treated as suits against the State," the Eleventh Amendment also prohibits suits against a state official in his or her "official capacity" for *monetary* relief. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). This prohibition, however, does not apply to "official capacity" suits for *injunctive* relief. *Verizon Md., Inc., v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). But more is required of an "official capacity" claim under Section 1983 than an "individual capacity" claim: "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's 'policy or custom' must have played a part in the violation of federal law.' " *Hafer*, 502 U.S. at 25 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

Plaintiff may therefore proceed against CDCR Secretary Beard in his official capacity only for the purposes of injunctive relief and only if a CDCR "policy or custom" played a roll in any constitutional violations suffered by Plaintiff. But as Defendants correctly point out, the FAC "fails to identify an official policy or custom for which

1    Defendant Beard is responsible, much less a policy or custom which resulted in the alleged
2    constitutional harms suffered by Plaintiff." Mot. at 6. Rather, the FAC states only that
3    "Plaintiff seeks injunctive relief against Secretary Beard to correct and prevent the practice
4    of CDCR officials' abusing the laws under which CDCR may restrict visitation privileges."
5    Opp'n at 7. And when asked at the January 11, 2016 hearing whether Plaintiff would have
6    any additional factual allegations of a "policy or custom" to add upon further amendment
7    of the FAC, counsel for Plaintiff conceded that Plaintiff's claims are not predicated upon
8    any policy or custom.

9    Accordingly, the Court hereby GRANTS Defendants' motion to dismiss all claims
10   as against CDCR Secretary Beard in his official capacity. Because Plaintiff has conceded
11   that she would have no additional factual allegations to include upon further amendment
12   of the FAC, it is clear that amendment would not cure this defect (*Steckman*, 143 F.3d at
13   1296), and dismissal shall therefore be WITH PREJUDICE.

## II. Defendants Lopez, Wilson, and DeAnzo must be dismissed because the FAC fails to make any allegations regarding their conduct.

17   Second, Defendants argue that because the FAC "is completely devoid of any
18   specific factual allegations involving Defendant[s] Wilson, Lopez, and De Anza [sic],"
19   these three Defendants should be dismissed entirely. Mot. at 6.

20   As Plaintiff correctly points out (Opp'n at 3-4), it is certainly true that "where the
21   identity of the alleged defendant is not known prior to the filing of a complaint, the
22   plaintiff should be given an opportunity through discovery to identify the unknown
23   defendants, unless it is clear that discovery would not uncover the identities, or that the
24   complaint would be dismissed on other grounds." *Wakefield v. Thompson*, 177 F.3d 1160,
25   1163 (9th Cir. 1999) (internal quotation marks, citation, and alterations omitted). But the
26   issue presented here is somewhat different; rather than arguing that "Doe pleading" is
27   improper, Defendants challenge the practice of naming individuals in a complaint without
28   tying those individuals to the specific conduct alleged therein. Mot. at 6.

6

1  To that end, the FAC references Defendants Wilson, Lopez, and DeAnzo only in
2  the "Parties" section, and alleges only that Defendant Lopez "participated in the unlawful
3  search and seizure of Plaintiff" (FAC ¶ 10),[12] and that Defendants Wilson and DeAnzo
4  "directly participated in the unlawful search and seizure and other violations of plaintiff's
5  rights" (*id.* ¶¶ 16-17). These three Defendants are not mentioned again in either the FAC's
6  "Factual Allegations" or anywhere within the three causes of action. So the question is
7  whether the general allegations regarding Defendants Wilson's, Lopez's, and DeAnzo's
8  "participation" suffice to state a claim against these three individuals.

9  Another court in this circuit recently addressed this issue in the context of similarly
10 vague allegations. In *DeLuca v. County of Los Angeles*, No. 15-00344, 2015 WL 4451420
11 (C.D. Cal. July 20, 2015), the plaintiff made specific allegations of an unconstitutional
12 search and seizure,[13] but alleged only generally that each of the six named defendants
13 "participated directly" in the unlawful conduct, without tying any of them to specific acts.
14 2015 WL 4451420, at *4. And the *DeLuca* court held that such pleading was insufficient
15 because it was "not plausible that each [defendant] engaged in the same alleged conduct."
16 *Id*. The court noted that if, for example, "the identity of the person or persons who
17 handcuffed [plaintiff] is unknown," it would be more appropriate for that fact to be
18 "expressed in the complaint, and upon learning of the parties involved, [plaintiff] can seek
19 to amend the complaint." *Id.*

20 The Plaintiff in this case argues, to the contrary, that "[a] complaint may assert
21 allegations against multiple individuals in a group that participated in constitutional
22 violations even though the plaintiff cannot identify with precision which individual was
23 responsible for which act." Opp'n at 3. Plaintiff cites *Hughey v. Camacho*, 2015 U.S.

---

[12] Though the FAC also alleges that Defendant Lopez was "supervisor in charge of the visiting room at SVSP on the day of the incident" (FAC ¶ 10), Plaintiff's counsel explained at the January 11, 2016 hearing that Defendant Lopez's liability is not based upon supervisory liability alone, but on his or her direct participation in the alleged constitutional violations.
[13] The *DeLuca* plaintiff's allegations included that sheriff's deputies broke down her bedroom door, handcuffed her, and detained her for up to thirty minutes, all in violation of her Fourth Amendment rights. 2015 WL 4451420, at *2.

7

1  Dist. LEXIS 113473 (E.D. Cal. Aug. 24, 2015) to support this argument. There, the court
2  upheld a Section 1983–Fourth Amendment claim against "eight responding officers,"
3  despite the fact that the complaint did not specify which unlawful acts were performed by
4  which officers. 2015 U.S. Dist. LEXIS 113473, at *23-30. Indeed, the court held that
5  "[f]or the purposes of this motion to dismiss, Plaintiffs are not required to know which of
6  the eight officers performed every act throughout the altercation." *Id.* at *10-11.

7  Importantly, however, the defendants in *Hughey* did not dispute that the eight
8  officers named in the complaint were present during the altercation that gave rise to the
9  constitutional harms alleged therein. *Id.* at *11. Here, on the other hand, Defendants have
10 not conceded that all twelve of the Defendants sued in their individual capacities were
11 present during each of Plaintiff's alleged constitutional violations. Moreover, as was the
12 case in *DeLuca*, it is simply not "facially plausible" that all twelve Defendants participated
13 individually in the various harms that befell Plaintiff, which spanned several locations and
14 lasted seven to eight hours. 2015 WL 4451420, at *4; *Iqbal*, 556 U.S. at 678. It is not
15 plausible, for example, that all twelve Defendants searched her phone, all twelve
16 Defendants exited SVSP to search her car, and all twelve Defendants uttered the nine
17 offensive statements alleged in the FAC. Accordingly, as in *DeLuca*, it would be more
18 appropriate for Plaintiff to admit that she is not yet able to tie each Defendant to their
19 unlawful conduct, proceed on a "Doe pleading," and amend the complaint to add
20 Defendants once discovery clarifies their role in the abuse she suffered.[14]

21 Without any factual allegations to otherwise tie Defendants Wilson, Lopez, and
22 DeAnzo to any of the seven constitutional violations that Plaintiff alleges, Plaintiff has
23 therefore failed to plausibly state a claim that they "[did] an affirmative act, participate[d]

---

[14] This holding should in no way be read as barring a later argument by Plaintiff that certain Defendants are liable "even if they did not directly engage in the unconstitutional conduct themselves," on an "integral participant" theory. *See Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009). But in the meantime, without more specificity regarding which Defendants were even aware of which constitutional violations, it would be improper to uphold all seven claims against all twelve Defendants on the basis of general allegations of "participation" alone.

in another's affirmative acts, or omit[ted] to perform an act which [they were] legally required to do." *Leer*, 844 F.2d at 633 (citation omitted). Accordingly, Defendants' motion to dismiss all claims as against Defendants Wilson, Lopez, and DeAnzo is hereby GRANTED. But because this defect will almost certainly be cured with discovery and subsequent amendment, dismissal shall be WITHOUT PREJUDICE. *Steckman*, 143 F.3d at 1296.

### III. The Fourth Amendment claim for unlawful search must be dismissed except as against Defendants Alonzo, Lyons, and the Does, for failure to make any allegations regarding any other Defendant's conduct.

Third, Defendants argue that Plaintiff's second cause of action – a Fourth Amendment claim for unlawful search – should be dismissed as against all Defendants other than Defendants Alonzo and Lyons. Mot. at 7.

The FAC alleges that Defendants Alonzo, Lyons, and Does 6-7 conducted the strip search of Plaintiff, namely, that they "took [Plaintiff] to a bathroom and ordered her to unbutton her shirt, rearrange her bra, and pull down her pants and undergarments for a visual inspection of her genitals and anus." FAC ¶ 33. But the Defendants are correct that Plaintiff does not identify any other specific Defendant who participated in either the strip search or the searches of Plaintiff's cell phone and car. *See id.* ¶ 36 ("Defendants . . . demanded that [Plaintiff] consent to a search of her locked car."); *id.* ¶ 38 ("Defendants . . . demanded that [Plaintiff] consent to a search of her mobile telephone."). And for the reasons set forth in Section II above, such general allegations are insufficient to state a claim that all twelve Defendants named in their individual capacities participated at every step of Plaintiff's seven- to eight-hour ordeal, including the search of her body, phone, and car (which presumably all took place in different locations). Because the FAC makes specific search allegations as to only the participation of Defendants Alonzo and Lyons, Plaintiff has therefore failed to state a Fourth Amendment claim for unlawful search as to all named Defendants except Alonzo and Lyons.

9

Accordingly, Defendants' motion to dismiss the second cause of action – for violation of the Fourth Amendment through unlawful search – is hereby GRANTED as to all Defendants except Defendants Alonzo, Lyons, and the Does.[15]  But because this defect will almost certainly be cured with discovery and subsequent amendment, dismissal shall be WITHOUT PREJUDICE.  *Steckman*, 143 F.3d at 1296.

### IV. The Fourth Amendment claim for unlawful seizure, First Amendment claims for free-exercise and retaliation, and Fourteenth Amendment claim for equal protection must be dismissed except as to the Does, for failure to make any allegations regarding any Defendant's conduct.

Fourth, Defendants argue that Plaintiff's "Fourth Amendment . . . claim for unlawful arrest," "claims based on violations of her free-exercise rights under the First Amendment," "claim for First Amendment retaliation," and "claims under the Fourteenth Amendment for violations of equal protection" must likewise be dismissed for failure to make any assertions against specific Defendants.  Mot. at 7-8.[16]

Defendants are correct that the FAC does not contain any assertions against a specific Defendant for any of these claims.  *See, e.g.*, FAC ¶ 27 (alleging "Doe 1" handcuffed Plaintiff); *id.* ¶ 28 (alleging "Defendants (including Does 1-50)" told Plaintiff "she was not free to leave"); *id.* ¶ 31 (alleging "Does 1-50" made the offensive and derogatory comments to Plaintiff); *id.* ¶ 41 (alleging "Does 1-50" threatened Plaintiff not to report any of this mistreatment).  And for the reasons set forth in Section II above, general allegations are insufficient to state a claim against the twelve Defendants named in their individual capacities, as it is not plausible that all twelve participated in every one of

---

[15] As discussed in Section II above, "Doe pleading" is accepted in this circuit. *Wakefield*, 177 F.3d at 1163.

[16] Defendants do not challenge Plaintiff's claim based on her Fourteenth Amendment right to familial association (FAC ¶ 66) for failure to make any assertions against specific Defendants.  And for good reason: Plaintiff does specifically allege that the "letter" connected to her visitation suspension was written by Defendant Grounds (*id.* ¶ 43), that the corresponding "notice" was prepared by Defendant Alvarado (*id.* ¶ 44), and that Defendants Muniz and Segura denied her reapplications for visitation rights (*id.* ¶ 46).

1   these constitutional violations.  Plaintiff has therefore failed to state the Fourth
2   Amendment claim for unlawful arrest (first cause of action), First Amendment free-
3   exercise claim (*id.* ¶ 63), First Amendment retaliation claims (*id.* ¶¶ 64, 65), and
4   Fourteenth Amendment equal protection claim (*id.* ¶ 62) against any of the named
5   Defendants.  Accordingly, Defendants' motion to dismiss these claims is hereby
6   GRANTED as to all Defendants except the Does.[17]  But because this defect will almost
7   certainly be cured with discovery and subsequent amendment, dismissal shall be
8   WITHOUT PREJUDICE.  *Steckman*, 143 F.3d at 1296.

### V. The First Amendment claim for retaliation based on Plaintiff's son's conduct must be dismissed for failure to state a claim.

Fifth, Defendants argue that Plaintiff failed to state her First Amendment claim for retaliation, which is predicated upon the two prison grievances her son filed sometime before she visited him on August 18, 2013.  Mot. at 8-9; FAC ¶ 32.  Defendants argue that the claim fails because Plaintiff lacks standing to sue *on behalf of her son*.  Mot. at 8-9.

To state a third-party claim, "three important criteria [must be] satisfied: The litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests."  *Powers v. Ohio*, 499 U.S. 400, 411 (1991) (citations omitted).  Here, Defendants argue, "even assuming Plaintiff were able to meet the first two elements," she cannot meet the third element because her "son's ability to vindicate his own constitutional rights is unhindered," as evidenced by the fact that he "availed himself of the prisoner grievance process and is involved in a federal civil rights lawsuit."  Mot. at 9.

But as Defendant's seem to understand, Plaintiff does not seek to vindicate her son's rights *on his behalf*.[18]  Rather, Plaintiff's First Amendment retaliation claims are two-fold,

---

[17]   *See supra* n.15.
[18]   *See* Mot. at 9 ("Plaintiff claims that Defendants *retaliated against her* for her son's

11

but in either event predicated upon retaliation *she herself suffered*. First, Plaintiff brings a claim for retaliation against her for *her own conduct*, based on Defendants' attempts to hinder her First Amendment right to petition the government.[19] Opp'n. at 7. Defendants do not appear to challenge the sufficiency of the FAC's allegations as to this first avenue for a First Amendment retaliation claim. Second, Plaintiff brings a claim for retaliation against her for *her son's conduct*, based on what she believes were retributory actions against her for her son's prison grievances.[20] *Id*. It is this second avenue for a First Amendment retaliation claim that Defendant argues is insufficiently pleaded.

Plaintiff's counsel confirmed at the January 11, 2016 hearing that this second avenue sounds in "associational retaliation"; in other words, Plaintiff seeks redress for retaliation she suffered as her son's "associate" for his prior protected speech, not redress for retaliation he suffered for that speech. The *Powers* third-party standing test is therefore irrelevant in understanding the legal sufficiency of plaintiff's "associational retaliation" claim, as Plaintiff is not attempting to bring an action on behalf of any third party. Unfortunately, however, Plaintiff has provided no legal authority to test the sufficiency of her "associational retaliation" claim, despite being specifically asked at the January 11, 2016 hearing to provide legal authority to support such a claim. And *Powers* is the only case cited in Plaintiff's opposition briefing for the retaliation claim based on her son's conduct. Opp'n at 7. *Powers* is therefore the only available authority for assessing the claim, and under that test, the Court agrees with Defendants that the claim fails because Plaintiff's son has clearly demonstrated his "ability to protect his [] own interests." *Powers*, 499 U.S. at 411.

Accordingly, the Court hereby DISMISSES Plaintiff's First Amendment retaliation

---

protected First Amendment activities.") (emphasis added).
[19] Specifically, the FAC alleges "Defendants (including Does 1-50) threatened that if Plaintiff complained about her mistreatment, false arrest and unlawful searches, she would never see her son again," and that this represented an "attempt[] to chill her First Amendment right to petition the government for redress of grievances." FAC ¶¶ 41, 64.
[20] Specifically, the FAC alleges that "Defendants improperly retaliated and discriminated against [Plaintiff] based on her son's filing of prison grievances and appeals, which is protected First Amendment activity." *Id.* ¶ 65.

claim that is based on *her son's conduct* (FAC ¶ 65).[21]  But dismissal shall be WITHOUT PREJUDICE, as the Court is not convinced that an "associational retaliation" claim is impossible on these or similar facts.  Should Plaintiff elect to continue with such a claim, she should be prepared to provide legal authority to support the claim, such that the Court may properly address the sufficiency of the factual allegations on any subsequent dispositive motions.

### VI. The First Amendment claim for free exercise of religion must be dismissed for failure to state a claim.

Finally, Defendants argue that Plaintiff's First Amendment free-exercise claim should be dismissed for failure to state a claim.  Mot. at 10.

" 'Official action,' either through the passage of a facially discriminatory law or through the application of a neutral law in a discriminatory manner, violates the free exercise clause when the 'object or purpose of [that action is] suppression of religion or religious conduct.' "  *Turner v. Oakland Police Officers*, No. C 09-03652, 2010 WL 234898, at *2 (N.D. Cal. Jan. 14, 2010) (citing *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 533 (1993)).  "[T]o merit protection under the free exercise clause of the First Amendment . . . the claimant's proffered belief must be sincerely held . . . and the claim must be rooted in religious belief."  *Id.* at *2 (quoting *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981)).  In *Turner*, for example, the court dismissed an arrestee's claim that the seizure of his "blessing oils" violated his right to practice his religion, because the "complaint provide[d] no factual allegations supporting . . . that the arrest did, in fact, interfere with his religious practices," and "the pleadings [did] not describe

---

[21] This ruling supplants the Court's prior ruling, in Section III above, that Defendants' third argument did not require dismissal of Plaintiff's second retaliation claim (*id.* ¶ 65) *as against the Does*.  Because Defendant's fourth argument – as captured in this section – challenges the sufficiency of the alleged conduct underpinning Plaintiff's second retaliation claim, rather than just the identity of the alleged wrongdoer, this argument requires dismissal against all potential Defendants, including the Does, because no claim is plausibly stated.

13

1 plaintiff's religion, his religious practices, or the role blessing oil plays in the religion." *Id.*

2    Plaintiff's theory for her free exercise claim is that Defendants' derogatory
3 comments about her religion are enough on their face to "support a claim that Defendants'
4 unlawful animus toward Muslims was a substantial factor motivating the cruel and
5 unlawful treatment of Plaintiff." Opp'n at 8. These comments included:

6 
> "What kind of Muslim are you – Sunni or Shia?"
> "What mosque do you go to?"
> "Do you pray five times a day?"
> "If you are a Muslim, why don't you cover yourself?"
> "All Muslims are terrorists."
> "America is no place for Muslims."

11 FAC ¶ 31.

12    Even taken as true, however, these comments – as deplorable as they may be – are
13 insufficient on their own to state a claim that Defendants acted with the object or purpose
14 of suppressing Plaintiff's religion or religious practice. The FAC provides no factual
15 allegations about what religious practice the comments could have even interfered with,
16 given that Plaintiff was not present at SVSP to exercise her religion.[22] And though the
17 comments certainly sound discriminatory, Plaintiff has a pending Equal Protection claim
18 aimed at redressing such discrimination. *See id.* ¶ 62. The comments alone therefore do
19 not represent "enough facts to state a claim to relief that is plausible on its face" for a First
20 Amendment–free exercise violation. *Twombly*, 550 U.S. at 570.

21    Accordingly, Defendants' motion to dismiss Plaintiff's free exercise claim (FAC ¶
22 63) is GRANTED.[23] As it is not clear that amendment could not possibly cure these
23 defects, dismissal shall be WITHOUT PREJUDICE. *Steckman*, 143 F.3d at 1296.

---

[22] At the January 11, 2016 hearing, Plaintiff's counsel argued that derogatory comments alone can "chill" a religious practice – even where no specific practice or conduct is interfered with – by likening Plaintiff's treatment at SVSP to the Yellow Stars that members of the Jewish faith were forced to wear throughout Nazi-occupied Europe. If Plaintiff intends to continue pursuing this theory, she shall be prepared to defend it with legal authority on any subsequent dispositive motions.

[23] For the same reasons discussed above (*see supra* n.21), this ruling supplants the Court's prior ruling in Section III that Defendants' third argument did not require dismissal

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED, as follows: all claims against Defendant Beard are DISMISSED WITH PREJUDICE; all claims against Defendants Lopez, Wilson, and DeAnzo are DISMISSED WITHOUT PREJUDICE; the Fourth Amendment claim for unlawful search (second cause of action) is DISMISSED WITHOUT PREJUDICE except as against Defendants Alonzo, Lyons, and the Does; the Fourth Amendment claim for unlawful seizure (first cause of action) and Fourteenth Amendment claim for equal protection (FAC ¶ 62) are DISMISSED WITHOUT PREJUDICE except as against the Does; and the First Amendment claim for retaliation based on Plaintiff's son's conduct (*id.* ¶ 65) and the First Amendment free-exercise claim (*id.* ¶ 63) are DISMISSED WITHOUT PREJUDICE in their entirety.

Should Plaintiff elect to file an amendment to the FAC curing the deficiencies identified herein, she shall do so by February 12, 2016.  Failure to file a timely amended complaint shall result in dismissal of all claims with prejudice.

**IT IS SO ORDERED.**

Dated:   01/29/16

_____
THELTON E. HENDERSON
United States District Judge

---

of Plaintiff's free exercise claim *as against the Does*.  That claim is now DISMISSED WITHOUT PREJUDICE as against all Defendants, including any Does.