1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LATIFA ISAKHANOVA,

Plaintiff,

v.

WILLIAM L. MUNIZ, et al.,

Defendants.

Case No. 15-cv-03759-TEH

**ORDER DENYING DEFENDANTS'
MOTION TO DISMISS**

This matter came before the Court on April 11, 2016 for a hearing on Defendants'
Motion to Dismiss Plaintiff's Second Amended Complaint. Dkt. No. 27. After carefully
considering the parties' written and oral arguments, the Court hereby DENIES Defendants'
motion, for the reasons set forth below.

**BACKGROUND**

The Second Amended Complaint ("SAC") alleges that on August 18, 2013,
Plaintiff arrived at Salinas Valley State Prison ("SVSP") to visit her son, who is an inmate
there. SAC ¶ 20 (Dkt. No. 25). Prior to Plaintiff's visit, her son had "signed two prison
group grievances and two inmate group appeals challenging SVSP's interference with the
religious practices of Muslim inmates." *Id.* ¶ 28. At the start of the visit, Plaintiff's son
was brought into the visiting room. *Id.* ¶ 20. Sometime after the visit began, a correctional
officer removed Plaintiff's son from the visiting room. *Id.* Later, a correctional officer
returned and handcuffed Plaintiff, *id.* ¶ 21, purportedly because the guards suspected she
had passed a "bindle of chewing tobacco" to her son during the visit, *id.* ¶¶ 3, 40.

Ultimately, SVSP officers detained Plaintiff for a period of seven to eight hours, *id.*
¶¶ 21, 38, during which time they strip searched her, *id.* ¶¶ 29-31, searched her car and cell
phone (allegedly against her will and without a warrant), *id.* ¶¶ 33-36, and denied her
access to her diabetes medication, food, and water, *id.* ¶¶ 2, 32. Throughout the detention,

1    officers made offensive and derogatory remarks about Plaintiff's religion (Islam) and

2    foreign national origin (she is a naturalized U.S. citizen), including the statements "All

3    Muslims are terrorists" and "America is no place for Muslims." *Id.* ¶ 27.

4         When they finally released Plaintiff, prison officials "threatened [] that if she

5    complained about her mistreatment, false arrest and unlawful searches, she would never

6    see her son again." *Id.* ¶ 38.  Following this incident, SVSP suspended Plaintiff's

7    visitation rights for one year, for the "bindle of chewing tobacco" found on her son and for

8    having unlawful text message communications with her son. *Id.* ¶¶ 40-41.  SVSP denied

9    Plaintiff's appeals of this suspension and reapplications for visitation rights for nearly two

10   years, reinstating her visitation rights only after this lawsuit was filed. *Id.* ¶¶ 42-44.

11        The SAC brings six causes of action against seven Defendants in their individual

12   capacities: William L. Muniz; Sgt. G. Segura; Sgt. A. Lopez; [FNU] Hyde; R. Alvarado;

13   M. Alonzo; and [FNU] Lyons.  Plaintiff's six causes of action, all rooted in 42 U.S.C. §

14   1983 ("Section 1983"), are: Unlawful Arrest in Violation of the Fourth Amendment;

15   Unlawful Searches in Violation of the Fourth Amendment; Violation of Fourteenth

16   Amendment Rights (Equal Protection); Violation of First Amendment Rights

17   (Establishment Clause); Violation of First Amendment and Fourteenth Amendment Rights

18   (Family Association); and Violation of First Amendment Rights (Right to Petition).

19

20   **LEGAL STANDARD**

21        Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a

22   plaintiff's allegations fail "to state a claim upon which relief can be granted."  To survive a

23   motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is

24   plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 547, 570 (2007).  "The

25   plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

26   sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662,

27   678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that

28   allows the court to draw the reasonable inference that the defendant is liable for the

United States District Court
Northern District of California

2

misconduct alleged." *Id.*  Such a showing "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).  Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation omitted).

**DISCUSSION**

Defendants present three issues for resolution on this motion: whether "Plaintiff's claims against Defendant Lopez [should] be dismissed"; whether "Plaintiff [stated] a personal claim for First Amendment retaliation"; and whether "Plaintiff [stated] a claim for religious interference in contravention of the Free Exercise Clause."  Defs.' Mot. to Dismiss ("Mot.") at 2-3 (Dkt. No. 27).[1]

## I.   Plaintiff adequately states a Section 1983 "supervisory liability" claim against Sergeant Lopez.

Defendants first argue that Plaintiff fails to state a Section 1983 "supervisory liability" claim against Sergeant Lopez.  Mot. at 3-4.  (This argument implicates only the first and second causes of action, brought under the Fourth Amendment, as those are the only two for which Lopez is listed as a defendant.  SAC ¶¶ 48-60.)

To state a claim under Section 1983, the complaint must show: "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution

---

[1]   Defendants' motion initially misidentified Plaintiff's fourth cause of action as a "Free Exercise" claim, Mot. at 5-6, despite the fact that the SAC identifies the claim under the Establishment Clause, SAC ¶¶ 68-71.  Defendants' corrected this mistake in their reply briefing, and the Court considers the third issue only under the Establishment Clause. *See infra* § III.

or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988).
Though the Supreme Court held in *Iqbal* that "vicarious liability" does not exist in Section
1983 lawsuits, 556 U.S. at 676, the Ninth Circuit has "long permitted plaintiffs to hold
supervisors individually liable in [Section] 1983 suits when culpable action, or inaction, is
directly attributed to them," and has "never required a plaintiff to allege that a supervisor
was physically present when the injury occurred," *Starr v. Baca*, 652 F.3d 1202, 1205 (9th
Cir. 2011). The Ninth Circuit summarized the state of "supervisory liability" claims under
Section 1983, post-*Iqbal*, as follows:

> A person "subjects" another to the deprivation of a
> constitutional right, within the meaning of section 1983, if he
> does an affirmative act, participates in another's affirmative
> acts, or omits to perform an act which he is legally required to
> do that causes the deprivation of which complaint is made.
> Moreover, personal participation is not the only predicate for
> section 1983 liability. Anyone who "causes" any citizen to be
> subjected to a constitutional deprivation is also liable. The
> requisite causal connection can be established not only by
> some kind of direct personal participation in the deprivation,
> but also by setting in motion a series of acts by others which
> the actor knows or reasonably should know would cause others
> to inflict the constitutional injury.

*Lacey v. Maricopa Cty.*, 693 F.3d 896, 916 (9th Cir. 2012) (quoting *Johnson v. Duffy*, 588
F.2d 740, 743-44 (9th Cir. 1978)). Accordingly, "[a] defendant may be held liable as a
supervisor under [Section] 1983 'if there exists either (1) his or her personal involvement
in the constitutional deprivation, or (2) a sufficient causal connection between the
supervisor's wrongful conduct and the constitutional violation.' " *Starr*, 652 F.3d at 1207
(quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). Moreover, "[f]or an official
to be liable for another actor's depriving a third party of his constitutional rights, that
official must have at least the same level of intent as would be required if the official were
directly to deprive the third party of his constitutional rights." *Lacey*, 693 F.3d at 916.

The question now before the Court is whether the SAC's allegations are sufficient
to state a Section 1983 claim against Lopez under a theory of supervisory liability. To that
end, the SAC makes the following allegations regarding Lopez:

4

> Defendant Sgt. A. Lopez was assigned as a supervisor in charge of the visiting room at SVSP on the day of the incident. On information and belief, Defendant Lopez personally directed, approved and/or ratified the unlawful handcuffing, arrest and detention of plaintiff and the unlawful strip search of plaintiff that were carried out by other Defendants. Lopez knew or reasonably should have known that other Defendants (including Does 1 to 50) were depriving Plaintiff of the Fourth Amendment right to be free from unreasonable search and seizure and failed to act to prevent the unlawful searches and seizure.

SAC ¶ 9.  When asked at the April 11, 2016 hearing whether Plaintiff had any additional allegations regarding Lopez, she clarified that Lopez was not only in charge of the officers who detained and searched her, but was also physically present throughout the ordeal.

Defendants argue that these allegations amount to a mere "formulaic recitation of the elements of supervisory liability," and that the Supreme Court rejected similarly conclusory allegations of supervisory liability in *Iqbal* itself.  Defs.' Reply in Supp. of Mot. to Dismiss ("Reply") at 2 (Dkt. No. 31); *see also Iqbal*, 556 U.S. at 680-81 (rejecting claim alleging that defendants "knew of, condoned, and willfully and maliciously agreed to" unconstitutional discrimination).

The Court disagrees.  Though Plaintiff's allegations regarding Lopez do track the language of the case law discussed above, the context of those allegations – multiple Fourth Amendment injuries occurring by Lopez's immediate subordinates, and perhaps in her presence, over a seven- to eight-hour period – pushes the likelihood that Lopez is liable as a supervisor for those injuries from possible to plausible.  Unlike *Iqbal*, Lopez need not act with discriminatory purpose or intent to be held liable as a supervisor, because Plaintiff brings only her Fourth Amendment search and seizure claims against Lopez.  And the SAC's allegations otherwise plausibly allege a "sufficient causal connection between [Lopez's] wrongful conduct and [those] constitutional violation[s]."  *Starr*, 652 F.3d at 1207.  Defendants cite no case law supporting dismissal of detailed search and seizure allegations as against the sergeant who was "in charge of" the location where the alleged constitutional injuries occurred over a period of hours; without any such authority, the Court declines to limit supervisory liability in the manner Defendants seek.

5

1

2

Accordingly, Defendants' motion to dismiss the Fourth Amendment claims as against Lopez is hereby DENIED.

3

4

**II.      Plaintiff has stated a First Amendment retaliation claim.**

5

Defendants next argue that Plaintiff's sixth cause of action for First Amendment

6

violations must be dismissed for failure to state a claim, to the extent that the claim is

7

predicated upon alleged retaliation against Plaintiff for her son's First Amendment

8

activity.[2]  Mot. at 4-5.

9

Under the First Amendment, governmental actors are prohibited from "abridging

10

the freedom of speech . . . or the right of the people peaceably to assemble, and to petition

11

the Government for a redress of grievances."  U.S. Const. amend. I.  Though Defendants

12

argue to the contrary, there is a line of cases recognizing a cause of action where an

13

individual has suffered retaliation for his or her perceived association with the speech of a

14

close family member.  As one district court recently stated:

15

16

17

18

> Often in First Amendment retaliation cases, the government is claimed to have retaliated against the plaintiff for her own speech; but the First Amendment may also be violated where the speech that invoked the government's retaliatory response was not made by the plaintiff herself, but rather by a person in a close relationship with the plaintiff, and the government retaliated against the plaintiff for her perceived association with the other person and that person's speech.

19

20

*Lewis v. Eufaula City Bd. of Educ.*, 922 F. Supp. 2d 1291, 1302 (M.D. Ala. 2012)

21

(collecting cases).  The Second Circuit has also recognized that "a spouse's claim that

22

adverse action was taken solely against that spouse in retaliation for conduct of the other

23

spouse should be analyzed as a claimed violation of a First Amendment right of intimate

24

association."  *Adler v. Pataki*, 185 F.3d 35, 44 (2d Cir. 1999).

25

Defendants first argue that this line of cases is inapplicable because in the Ninth

26

Circuit, the basis for a claim of this nature is the Fourteenth Amendment, not the First

27

28

---

[2]      Defendants did not challenge the portion of Plaintiff's sixth cause of action that is predicated upon Plaintiff's right to petition the government.  SAC ¶ 77.

United States District Court
Northern District of California

Amendment. *See* Reply at 4 (citing *IDK, Inc. v. Clark Cty.*, 836 F.2d 1185, 1192 (9th Cir. 1988)). The case Defendants cite, however, concerned the proper constitutional hook for a very different constitutional harm; in *IDK*, the Ninth Circuit considered a county ordinance outlawing escort services, and determined that "dating" is an association protected by the Fourteenth Amendment, rather than the First. 836 F.2d at 1192. The case now before the Court is meaningfully different; it involves alleged retaliation against one "associated party" for the speech of another, which falls squarely within the First Amendment protections outlined in cases such as *Lewis* and *Adler*. This is a constitutional harm separate and apart from Plaintiff's fifth cause of action for violation of her right to familial association, which is predicated upon the harm suffered when her visitation rights were suspended for two years. SAC ¶¶ 72-75. And Defendants have cited no case law that forecloses relief for such harm in the Ninth Circuit, under the First Amendment or otherwise.

Defendants also argue that Plaintiff fails to state a retaliation claim under either the First or Fourteenth Amendments because "Plaintiff fails to allege that Defendants attributed the sentiments expressed by her son in his prison grievances and appeals to her" and fails to allege "any facts to demonstrate that Defendants *knew* about her son's grievance-filing activity." Reply at 4. However, this Court can and should draw the "reasonable inference" that Defendants were aware of the grievance-filing from the SAC's allegation that "Defendants' detention, questioning, and hostility toward [Plaintiff] was motivated in part as retaliation for her son's exercise of his First Amendment rights to file prison grievances . . . ." SAC ¶ 28; *see also Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim is hereby DENIED.

//

//

7

United States District Court
Northern District of California

1

**III.     Plaintiff has stated a claim under the Establishment Clause.**

2          Finally, Defendants argue that Plaintiff's fourth cause of action fails to state a

3    claim, under the Establishment Clause, for the derogatory comments the Defendant

4    officers made to Plaintiff about her religion.  Reply at 5-7.

5          The Supreme Court has stated that "the First Amendment forbids an official

6    purpose to disapprove of a particular religion . . . ."  *Church of the Lukumi Babalu Aye,*

7    *Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1992).  State actors may therefore violate the

8    Establishment Clause through either "endorsement or disapproval of religion."  *Lynch v.*

9    *Donnelly*, 465 U.S. 668, 688 (1984) (O'Connor, J., concurring); *see also Cty. of Allegheny*

10   *v. ACLU*, 492 U.S. 573, 595 (1989) (adopting Justice O'Connor's rationale in *Lynch*).

11   "Endorsement sends a message to nonadherents that they are outsiders, not full members

12   of the political community, and an accompanying message to adherents that they are

13   insiders, favored members of the political community.  Disapproval sends the opposite

14   message."  *Lynch*, 465 U.S. at 688.

15         Though "disapproval" and "hostility" cases are significantly less common than

16   "endorsement" cases under the Establishment Clause, the Supreme Court's seminal *Lemon*

17   test still applies to such claims: "Although *Lemon* is most frequently invoked in cases

18   involving alleged governmental preferences to religion, the test also 'accommodates the

19   analysis of a claim brought under a hostility to religion theory.' "  *Vasquez v. L.A. Cty.*,

20   487 F.3d 1246, 1255 (9th Cir. 2007) (quoting *Am. Family Ass'n, Inc. v. City and Cty. of*

21   *S.F.*, 277 F.3d 1114, 1121 (9th Cir. 2002)).  Indeed, the Eastern District of Michigan

22   recently applied the *Lemon* test in circumstances somewhat similar to those now before the

23   Court.  *See Cherri v. Mueller*, 951 F. Supp. 2d 918, 935-36 (E.D. Mich. 2013) (applying

24   *Lemon* on a motion to dismiss to test allegations that plaintiffs were detained at the United

25   States border and asked intrusive questions by border patrol agents about their religious

26   practices and beliefs).  Thus, the Court's task is to determine whether Plaintiff has

27   adequately stated a claim that the Defendant officers' questions and statements about her

28   religion ran afoul of the test set forth in *Lemon*.

Under *Lemon*, a government act is consistent with the Establishment Clause if it: (1) has a secular purpose; (2) has a principal or primary effect that neither advances nor disapproves of religion; and (3) does not foster excessive governmental entanglement with religion.  *See Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971).  The SAC alleges that numerous Defendants questioned Plaintiff about her religious beliefs, including by asking the following questions:

        a. "What kind of Muslim are you – Sunni or Shia?"

        b. "What mosque do you go to?"

        c. "Do you pray five times a day?"

        d. "If you are a Muslim, why don't you cover yourself?"

        e. "All Muslims are terrorists."

        f. "Why did you come to the United States?"

        g. "Are you a U.S. citizen?"

        h. "What is your legal status in this country?"

        i. "America is no place for Muslims."

SAC ¶ 27.

On the first prong of *Lemon*, Defendants have offered no explanation of why their investigation into whether Plaintiff passed her son tobacco had anything to do with her religious practices; without any such explanation, the "reasonable inference" is that their questions and statements about her religion lacked a secular purpose.  *Iqbal*, 556 U.S. at 678.  On the second prong of *Lemon*, "[a] government practice has the effect of impermissibly . . . disapproving of religion if it is 'sufficiently likely to be perceived by . . . nonadherents [of the controlling denomination] as a disapproval of their individual religious choices.' "  *Brown v. Woodland Joint Unified School Dist.*, 27 F.3d 1373, 1378 (9th Cir. 1994) (quoting *School Dist. of Grand Rapids v. Ball*, 473 U.S. 373, 390 (1985)).  Statements such as "All Muslims are terrorists" would be perceived by any reasonable Muslim as "disapproval of their individual religious choices."  *Id.*  Finally, under the third prong of *Lemon*, statements such as, "America is no place for Muslims," foster excessive

United States District Court
Northern District of California

9

governmental entanglement with religion, because they run afoul of the prohibition against "making adherence to a religion relevant in any way to a person's standing in the political community."  *Lynch*, 465 U.S. at 687.  Plaintiff therefore plausibly states a claim, under *Lemon*, that Defendants hostile questions are inconsistent with the Establishment Clause.[3]

Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment Establishment Clause claim is hereby DENIED.


**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is DENIED.


**IT IS SO ORDERED.**


Dated:   04/26/16

THELTON E. HENDERSON
United States District Judge

---

[3]    The "plausible fear" line of cases cited by Defendants, Reply at 5-7, do not change this conclusion.  Those cases consider whether a declarant's personally motivated religious speech can reasonably be attributed to the state.  For example, Defendants cite *Warnock v. Archer*, where the Eight Circuit held that personal religious effects, such as a framed psalm on the wall, are "clearly personal and [do] not convey the impression that the government is endorsing [the psalm]."  380 F.3d 1076, 1082 (8th Cir. 2004).  *See also Tucker v. Cal. Dept. of Educ.*, 97 F.3d 1204, 1212 (9th Cir. 1996) (noting that the alleged speech must "seem to be either endorsed or coerced by the State" to violate the Establishment Clause).  Here, Plaintiff's allegations – that she was repeatedly and aggressively questioned about her religion by numerous officers while being detained in a state facility – present remarkably different circumstances than such "personal effects" cases, and it can be reasonably inferred that Plaintiff believed this speech to be endorsed by the State.